Filed 1/30/24 P. v. Topete CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOVA ANTONIO TOPETE,<br><br>        Defendant and Appellant. | A162466<br><br>(Contra Costa County Super. Ct. No. 51820497) |

Christova Antonio Topete appeals after a jury convicted him of first degree murder and various firearms offenses and found true a special allegation that he personally used a firearm in the commission of the murder.  We recently reversed the conviction of Topete's trial codefendant, Sam Elliot Nazareta, because we found the prosecutor had violated *Batson-Wheeler* by using a peremptory challenge to dismiss a juror because of the juror's race or ethnicity.[1]  (*People v. Nazareta* (Dec. 19, 2023,

---

[1] *Batson v. Kentucky* (1986) 476 U.S. 79; *People v. Wheeler* (1978) 22 Cal.3d 258.

1

A162377) [nonpub. opn.] (*Nazareta).*)  Topete raises the same challenge, so we will reverse Topete's conviction as well.

Our opinion in *Nazareta* sets forth the relevant background and explains why reversal is necessary.  The parties are already familiar with that decision, so we will confine our discussion to the one new argument the Attorney General raises here that we did not already address in *Nazareta.*

One reason the prosecutor cited in the trial court for dismissing A. was that he was "not forthcoming" and "very, very vague in his answers" to voir dire questions.  The trial court did not rely on this rationale when it denied the *Batson-Wheeler* motion (as we pointed out in *Nazareta*), but the Attorney General nonetheless cites A.'s exchange with the prosecutor at the end of her questions to him during voir dire as evidentiary support for it.  After the prosecutor completed her questions about various legal concepts, she asked A. whether there was anything else in his background that she needed to know about.  He replied, "Nothing else."  The prosecutor prodded him, "You sure?"  A. then asked, "Are you the only prosecutor?"  When the prosecutor said she was, A. said, "We're okay."  The prosecutor then asked, "Do I need to be worried?" and A. said, "No."

A.'s question to the prosecutor is difficult to fathom and raises the possibility that he had some unexpressed bias against others in the prosecutor's office or cases prosecuted by more than one attorney.  In the abstract, such concerns might have supported a peremptory challenge, but they are not relevant here because the prosecutor did not raise them in the trial court.  We

must therefore look only at whether the exchange supports the prosecutor's stated rationale that A. was vague or not forthcoming. (*Miller-El v. Dretke* (2005) 545 U.S. 231, 252 ["when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. . . . If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false"]; *People v. Gutierrez* (2017) 2 Cal.5th 1150, 1167 ["When they assess the viability of neutral reasons advanced to justify a peremptory challenge by a prosecutor, both a trial court and reviewing court must examine only those reasons actually expressed"].) Whatever else might be said of it, A.'s exchange with the prosecutor cannot fairly be described as an example of A. being vague. If anything, it was the prosecutor's questions, "Anything else in your background?" and "Do I need to be worried?" that were vague, and A.'s responses to them were responsive under the circumstances.

Moreover, if this exchange caused the prosecutor any concern, whether relating to hidden bias, vagueness, or lack of information (the prosecutor's rationale that the trial court credited), the prosecutor was obligated to explore those concerns further in voir dire to obtain any necessary clarification. As we discussed in *Nazareta*, if the prosecutor wanted more information from A., she could have easily asked him more questions. Further follow-up questions would have been particularly warranted given the unusual nature of A.'s exchange with the

3

prosecutor.  The prosecutor's failure to delve any further after the exchange supports the inference that the prosecutor's stated reasons for excusing A. were pretextual.  (*People v. Baker* (2021) 10 Cal.5th 1044, 1083 [" '[u]nder certain circumstances perfunctory voir dire can be indicative of hidden bias' [citation], particularly when there is a dearth of questioning 'on a subject a party asserts it is concerned about' "].)

Accordingly, and for the reasons expressed in more detail in *Nazareta*, the judgment is reversed.

BROWN, P. J.

WE CONCUR:

STREETER, J.
GOLDMAN, J.

*People v. Topete* (A162466)